UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB SEBASTIAN MURPHY,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; I.C. SYSTEM, INC.; and SNAP RECOVERY, INC. d/b/a SNAP DEBT RECOVERY,<br><br>Defendants. | Civil Case No.:<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through the undersigned counsel, hereby alleges, based upon Plaintiff's personal knowledge, information and belief, and investigation of counsel, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* (the "FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (the "FDCPA").

## PARTIES

2. Plaintiff Jacob Sebastian Murphy ("Plaintiff") is a consumer as that term is defined in the FCRA and resides in New York, New York.

3. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626.

4. Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

5. Defendant I.C. System, Inc. ("I.C. System") is a furnisher of credit information and a debt collector under the FDCPA that maintains its principal place of business at 444 Highway 96 East, St. Paul, Minnesota 55127.

6. Defendant Snap Recovery, Inc. d/b/a Snap Debt Recovery ("Snap") is a debt collector under the FDCPA that maintains a place of business at 6000 S. Rio Grande Avenue, Suite 103, Orlando, Florida 32809.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k(d).

8. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTS

### A. The Alleged Debt: Protax's Engagement Terminated on Delivery of Plaintiff's 2023 Tax Returns

9. The alleged debt at issue originated with non-party Protax Consulting Services Inc. ("Protax"), a New York corporation with its principal place of business at Seven Penn Plaza, Suite 816, New York, New York 10001.

10. Protax is a tax preparation firm. Marc J. Strohl, CPA ("Strohl") is its principal.

11. Plaintiff engaged Protax to complete his annual tax return for 2023.

12. The Engagement Letter limited the scope of Protax's services to the preparation of those returns and provided that "Once our services are complete upon delivery of tax returns, this engagement terminates."

13. The accompanying Terms of Business provided that the "Engagement terminates upon delivery of said services, tax returns."

14. Protax delivered Plaintiff's 2023 tax returns and invoiced Plaintiff $2,150.00 on April 20, 2024.

15. Plaintiff paid the invoice reference in Paragraph 14, above, in full.

16. That invoice billed the preparation of Plaintiff's Federal Form 4868 and New York Form IT-370 filing extensions at $100.00.

**B. Plaintiff did not Engage Protax for the 2024 Tax Year and Timely Filed His Own Returns**

17. Plaintiff did not engage Protax to perform any services for the 2024 tax year.

18. Plaintiff executed no engagement letter for 2024, returned no tax organizer, provided no tax information, and never requested or authorized Protax to prepare or file anything on his behalf for that year.

19. Plaintiff prepared and filed his own 2024 tax returns using TurboTax.

20. The Internal Revenue Service accepted his 2024 federal return on April 12, 2025.

21. Georgia accepted his 2024 state return on April 13, 2025.

22. New York accepted his 2024 state return on April 13, 2025.

23. Each of those returns was filed and accepted before the April 15, 2025 filing deadline.

24. On June 14, 2025, Protax sent Plaintiff a mass email stating that it was still awaiting his 2024 tax information and asking him to notify Protax if he had already filed so that it could stop including him in further communications.

25. On June 16, 2025, Plaintiff replied: "Please remove me from the client list, thank you."

**C. Protax Billed Plaintiff $1,150 for an Extension He Did Not Authorize or Need**

26. Notwithstanding the terminated engagement and Plaintiff's June 16, 2025 instruction, Protax had filed a Federal Form 4868 and a New York Form IT-370 extension in Plaintiff's name on March 31, 2025, without his knowledge, request, or authorization.

27. Because Plaintiff's 2024 returns were filed and accepted before the deadline, the extensions Protax filed conferred no benefit on Plaintiff.

28. On July 20, 2025, Protax invoiced Plaintiff $1,150.00.

29. The invoice referenced in Paragraph 28, above, billed the preparation of Plaintiff's 2024 returns at "$NC," meaning no charge, and billed the same two extension forms Protax had billed at $100.00 the prior year at $1,000.00, plus $50.00 in software costs and $100.00 in postage and courier costs.

30. Protax had never quoted Plaintiff any price for the 2024 extension filings.

31. Protax alone possessed the information that it would charge ten times what it had charged for the identical two forms the prior year.

32. New York Form IT-370 carries no state filing fee.

33. Plaintiff disputed the invoice the same day, explaining that he had never engaged Protax for 2024, that the 2023 engagement had terminated on delivery of the 2023 returns, and that he had already filed his 2024 returns on time.

34. Five minutes after Plaintiff's first objection, Strohl responded that Plaintiff's "silence was approval to transact on your behalf," that "in New York state, historical service serves legally as a mandate to proceed for services, and there is a concept of quantum Meritus that we are entitled to be paid for the work that we have performed on your behalf," and that if Plaintiff did not pay, Protax would refer the account to Snap Debt Recovery, which would "add a 30%

collection fee to the invoice" and "pursue the debt ultimately reporting it to Experian, Equifax and Trans Union."

35. On July 21, 2025, Strohl wrote that "in New York State Quantum Meritus will compel any Civil Judge to grant our fees. With or without an engagement letter," and that Protax would "sue you in New York Civil Court and you can cry to the judge."

36. In the same message, Strohl asserted that "We obviously filed the extensions, before you filed your returns or they would never have been accepted." That assertion was false. Plaintiff's returns were filed before the April 15, 2025 deadline and required no extension to be accepted.

37. On July 26, 2025, Protax transmitted a Letter of Demand asserting that it was owed the invoiced amount "In accordance with our Letter of Engagement and Terms of Business executed by you and in our files, and Quantum Meritus for work performed for the 2024 tax season."

38. The Letter of Demand referenced in Paragraph 37, above, was captioned "Commercial Claim Arising Out of a Consumer Transaction," demanded payment of the "debt owed of $1,150.00 which you incurred on July 20, 2025" no later than 5:00 p.m. on August 8, 2025, and stated that on that date "collection fees of 30% or $345.00 will be added to the amount due" and that Plaintiff's "account will be transferred [to] our legal collection agency Snap Debt Recovery for collection, at which point they own your file."

39. Protax sent a copy of the Letter of Demand referenced in Paragraph 37, above, to Kenneth E. Aldous, Esq.

40. Plaintiff disputed the debt again on July 28, 2025.

41. In response to the dispute referenced in Paragraph 40, above, Strohl replied in full: "Mr Murphy: Let the show begin, good luck!"

**D. Snap Debt Recovery collected the alleged debt using a litigation-style caption.**

42. Protax referred the alleged debt to Snap.

43. On or about August 13, 2025, Snap sent Plaintiff a written communication enclosing documents it described as "supporting documentation for the above referenced amount owed to our client."

44. That communication was captioned "In Reference: Our File# 76718" and, on the line immediately below, "**Protax Consulting Services Inc v Jacob Murphy.**"

45. No lawsuit or other legal proceeding had been filed or commenced against Plaintiff by Protax, by Snap, or by anyone else, and none ever has been.

46. On August 15, 2025, Snap emailed Plaintiff demanding payment of $1,150.00 and stating that "your credit score may be impacted."

47. On August 19, 2025, Plaintiff sent Snap a written dispute invoking 15 U.S.C. § 1692g, disputing the debt in its entirety, and requesting a copy of any contract bearing his signature, an itemized statement of the services allegedly performed, and documentation showing that he authorized the 2024 extension filings.

48. On September 12, 2025, Plaintiff sent Snap a second written dispute explaining that the 2023 engagement letter and the 2024 invoice Snap had produced did not establish any obligation for the 2024 tax year, and again requesting validation.

49. Snap never provided Plaintiff with the validation the FDCPA requires.

50. Snap sought payment of $1,150.00. No agreement between Plaintiff and Protax authorized this amount, and no law permitted its collection.

**E. Protax Placed the Alleged Debt with Two Further Collectors and Told Each That Its Basis was Quantum Meruit**

51. On November 14, 2025, Protax sent Plaintiff a statement of account describing collection efforts by Snap. On January 9, 2026, Protax sent a statement of account stating that the alleged debt was "now active with our collection firm Transworld Systems Collection Inc agency."

52. On December 8, 2025, Transworld Systems Inc. sent Plaintiff a collection letter. Plaintiff disputed the debt with Transworld in writing on December 19, 2025.

53. Plaintiff then filed complaints with the Consumer Financial Protection Bureau on January 12, 2026.

54. On March 12, 2026, Transworld responded that it had placed the account "in a restrictive status to prevent further collection activity," and that "TSI has not reported the above-referenced account on your credit report." Transworld stated the balance as $1,520.57.

55. With that response, Transworld produced the document Protax had supplied as validation of the alleged debt, titled "Statement of Account - Murphy ('Murphy's') - 2023 and 2024 Protax Services" and addressed "Dear TSI."

56. In that document Protax told the collector: "Please additionally be advised that under the doctrine of Quantum Meruit we are entitled to be paid for the services rendered on behalf of the clients."

57. It repeated, on the following page of the document referenced in Paragraph 55, above, that "under the legal contract concept of Quantum Meritus Protax is entitled to be paid for the work that we perform on your behalf."

**F. I.C. System Furnished the Alleged Debt to Experian and Trans Union and Misstated its Amount**

58. Protax next placed the alleged debt with I.C. System.

59. On April 9, 2026, I.C. System furnished a collection tradeline concerning the alleged debt to Experian and to Trans Union, reporting a balance of $1,495.00 with Protax Consulting Services as the original creditor.

60. On April 10, 2026, the day after it began furnishing, I.C. System mailed Plaintiff its first written communication, a validation notice stating that Protax "is both the original and current creditor to whom this debt is owed."

61. That notice itemized the alleged debt as follows: "As of 7/20/2025 you owed: $1,495.00," and, for the period between July 20, 2025 and the date of the notice, "You were charged this amount of interest: + $0.00" and "You were charged this amount in fees: + $0.00."

62. Protax's invoice dated July 20, 2025, which I.C. System possessed and later produced, was for $1,150.00, not $1,495.00.

63. The $345.00 difference is a collection fee.

64. Protax's own statements of account described that fee prospectively, stating that "Collection fees of 25% or $345.00 will be added to the amount due."

65. Protax also stated that service fees would accrue "at 2% per month of the unpaid balance."

66. Protax stated that fee inconsistently: its statements described it as "25% or $345.00," a figure that is internally contradictory because $345.00 is thirty percent of $1,150.00, while its July 26, 2025 Letter of Demand described the same fee as "30% or $345.00."

67. I.C. System therefore represented that Plaintiff owed $1,495.00 on a date when the creditor's own invoice was $1,150.00, and represented that no fees had been added when the entire difference between the two figures was a fee.

68. On April 23, 2026, within the period the notice gave him, Plaintiff disputed the debt with I.C. System in writing, stated that the underlying services were not authorized, and requested verification including any signed engagement letter or written authorization applicable to the 2024 tax year.

69. On May 12, 2026, I.C. System responded by producing the same Protax Statement of Account asserting quantum meruit, together with the 2023 Engagement Letter, the Terms of Business, and the July 20, 2025 invoice.

70. On June 1, 2026, Plaintiff disputed again in writing.

71. In Plaintiff's June 1, 2026 dispute referenced in Paragraph 71, above, Plaintiff quoted the termination clause, noted that Protax had produced no executed engagement letter or authorization for 2024, and identified the pricing disparity: "Protax's April 2024 invoice charged $100 for preparation of Federal Form 4868 and New York Form IT-370 extension filings, whereas the July 2025 invoice seeks $1,000 for the same extension services." He attached both invoices and the Terms of Business.

72. I.C. System continued to furnish the tradeline to Experian and Trans Union.

**G. Plaintiff Disputed with Experian and Trans Union, and Both Verified the Tradeline as Accurate**

73. On June 25, 2026, Plaintiff sent written disputes to Experian and to Trans Union by certified mail, enclosing his correspondence with Protax, his disputes to the collection agencies, and his CFPB complaints.

74. The Trans Union dispute was delivered on June 27, 2026.

75. The Experian dispute on June 29, 2026.

76. Plaintiff explained in each dispute that he had never engaged Protax for the 2024 tax year, never authorized the services underlying the alleged debt, and did not owe the account being reported.

77. Upon information and belief, Experian and Trans Union each transmitted an automated consumer dispute verification to I.C. System concerning Plaintiff's June 2026 disputes.

78. Experian's dispute results state that Experian "contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."

79. I.C. System updated the account on July 10, 2026 and verified the disputed information as accurate.

80. On July 11, 2026, Trans Union completed its reinvestigation and reported: "We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE." Trans Union continued to report the tradeline with a balance of $1,495.00, a pay status of "In Collection," and an estimated removal date of June 2032.

81. On July 22, 2026, Experian completed its reinvestigation and reported that "The information you disputed has been verified as accurate." Experian continued to report the tradeline with a balance of $1,495.00 and a status of "Collection account. $1,495 past due," on record until April 2032.

82. Neither Experian nor Trans Union deleted or corrected the tradeline.

83. Had Experian and Trans Union conducted reasonable reinvestigations, and had I.C. System conducted a reasonable investigation, each would have determined that Plaintiff had no

account with Protax for the 2024 tax year, that the engagement on which the alleged debt rested had terminated by its own terms before the services were performed, and that the reported balance did not match the creditor's own invoice.

84. The tradeline was materially misleading to any person reviewing Plaintiff's consumer report.

85. The inaccurate tradeline communicated that Plaintiff had received services, had been billed for them, and had refused to pay a liquidated sum of $1,495.00.

86. To the contrary, Plaintiff had received nothing, had agreed to nothing, and owed nothing.

**H. Protax Continued to Demand Payment for the Debt and Offered to Remove the Tradeline for Money**

87. From July 25, 2025 through at least August 7, 2026, Protax sent Plaintiff no fewer than fifty-one automated statements of account concerning the alleged debt, on a substantially weekly basis.

88. Each of those statements stated that "if we do not received payment by Friday, August 8, 2025 5:00 pm a lawsuit will be filed against you in the Small Claims Commercial Claims Part of the Civil Court of New York City."

89. That date had already passed when the statements were sent. No lawsuit was ever filed, and none was intended.

90. Each of those statements also stated that the alleged debt would be pursued "legally against you" and that doing so would be "[a]ffecting your credit rating and legal status."

91. Plaintiff is a citizen of the United Kingdom who was lawfully present in the United States on an L-1A visa and was, during the period of these communications, pursuing lawful

permanent residence. He understood the reference to his "legal status" to concern his immigration status.

92. An unpaid private invoice for tax preparation services has no bearing on a consumer's immigration status. The representation was false.

93. In or about July 2026, while Plaintiff's disputes were pending with Experian and Trans Union and while I.C. System was verifying the tradeline as accurate, Protax's statements began offering to cause the tradeline to be removed in exchange for payment, stating that the account had been reported to the consumer reporting agencies and that "if you wish to have this removed please contact Protax" or I.C. System "to make a payment and satisfy this legally owing debt."

94. Those same statements represented that the account "was reported to Equifax, Experian, and TransUnion" on June 14, 2026 and June 21, 2026. No such tradeline appears on Plaintiff's Equifax file, and the tradeline was furnished on April 9, 2026.

**I. Defendants Violated the FCRA and FDCPA and Damaged Plaintiff**

95. The I.C. System collection tradeline is the only derogatory item on Plaintiff's consumer reports. The remainder of his credit history, built after he relocated to the United States, is positive and carries no late payments.

96. On July 28, 2026, Plaintiff applied for a Chase IHG One Rewards Premier credit card. JPMorgan Chase Bank obtained his Experian consumer report and approved him at an annual percentage rate of 27.74 percent, the highest rate in the product's published range of 19.24 percent to 27.74 percent.

97. On July 30, 2026, Plaintiff applied for a Capital One VentureOne Rewards credit card. Capital One obtained his Trans Union consumer report and his Experian consumer report

and approved him at a purchase annual percentage rate of 28.49 percent, the highest of the product's three published rate tiers of 18.49 percent, 24.49 percent, and 28.49 percent.

98. Had Experian, Trans Union, and I.C. System reported accurately, Plaintiff would have been offered materially better terms on both applications.

99. Because he resides in the United States, Portuguese lenders require a United States consumer report to underwrite the mortgages Plaintiff uses to purchase investment property in Portugal. Plaintiff has purchased such property approximately every two years and intends to continue.

100. Plaintiff has obtained lawful permanent resident status and is saving toward the purchase of a home in the United States. The tradeline places that financing at risk of denial, delay, or less favorable terms.

101. Plaintiff decided not to apply for a new apartment in New York City because of the tradeline's likely effect on a rental application.

102. Plaintiff incurred out-of-pocket costs for printing, mailing, and courier charges in disputing the alleged debt and the reporting.

103. Plaintiff spent approximately forty hours disputing the alleged debt with Protax, with each collection agency, with the consumer reporting agencies, and with the Consumer Financial Protection Bureau.

104. Plaintiff suffered emotional distress, including anxiety, frustration, and loss of sleep. The collection campaign ran through the period in which he was pursuing lawful permanent residence, and the repeated references to his "legal status" caused him to fear that a disputed private invoice could affect his ability to remain in the United States.

**J. Defendants Willfully Violated the FCRA and FDCPA**

105. I.C. System held the Engagement Letter, the Terms of Business, the 2023 invoice, and the 2024 invoice.

106. By June 1, 2026, I.C. System also held Plaintiff's written explanation that the engagement had terminated by its own terms, that no 2024 authorization existed, and that the same two forms had been billed at $100.00 the prior year. It verified the tradeline as accurate regardless.

107. I.C. System verified the disputed information to Trans Union on July 10, 2026, one day before Trans Union issued its results, on a dispute that had been delivered thirteen days earlier with supporting documents.

108. The validation document I.C. System produced on Plaintiff's dispute states on its face that the creditor's asserted basis for the alleged debt was quantum meruit.

109. Quantum meruit is available under New York law only where no enforceable agreement governs the subject matter. I.C. System therefore verified as an accurate account receivable a claim its own creditor had characterized as arising outside of contract.

110. Snap captioned a collection communication in the style of a filed lawsuit when no lawsuit existed, and did so on the first written communication it sent Plaintiff.

111. Snap continued to seek payment after receiving two written disputes that identified, with reference to the creditor's own contract, why no obligation existed.

112. Upon information and belief, Experian and Trans Union do not conduct independent investigations in response to consumer disputes and instead adopt the response of the furnisher. Both were on notice of the shortcomings of those procedures and elected not to change them.

**COUNT ONE**
**Violations of 15 U.S.C. § 1681e(b)**
**(Against Experian and Trans Union)**

113. Plaintiff incorporates the foregoing allegations by reference.

114. Experian and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy when they prepared and published consumer reports stating that Plaintiff owed a $1,495.00 collection account, when Plaintiff had no account with the original creditor for the period in question and the reported balance did not match the creditor's own invoice.

115. Each of Experian and Trans Union willfully, or at least negligently, violated the statute cited in this Count, rendering it liable for actual damages, statutory damages, punitive damages, and attorneys' fees in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT TWO**
**Violations of 15 U.S.C. § 1681i**
**(Against Experian and Trans Union)**

116. Plaintiff incorporates the foregoing allegations by reference.

117. Experian and Trans Union failed to conduct reasonable reinvestigations of Plaintiff's June 25, 2026 disputes, failed to review and consider all relevant information Plaintiff submitted, verified the tradeline as accurate, and failed to delete or correct information that was inaccurate, incomplete, and unverifiable.

118. Each of Experian and Trans Union willfully, or at least negligently, violated the statute cited in this Count, rendering it liable for actual damages, statutory damages, punitive damages, and attorneys' fees in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE**
**Violations of 15 U.S.C. § 1681s-2(b)**
**(Against I.C. System)**

119. Plaintiff incorporates the foregoing allegations by reference.

120. I.C. System received notice of Plaintiff's disputes from Experian and from Trans Union and failed to conduct a reasonable investigation, failed to review all relevant information available to it, verified inaccurate information as accurate, failed to correct its own records to prevent re-reporting, and failed to cease furnishing the inaccurate information.

121. I.C. System held the documents establishing that the engagement on which the alleged debt rested had terminated before the services were performed, and held both invoices showing the pricing disparity. A reasonable investigation would have produced a different result.

122. I.C. System willfully, or at least negligently, violated the statute cited in this Count, rendering it liable for actual damages, statutory damages, punitive damages, and attorneys' fees in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR**
**Violations of 15 U.S.C. §§ 1692, *et seq*.**
**(Against Snap Debt Recovery and I.C. System)**

123. Plaintiff incorporates the foregoing allegations by reference.

124. Snap and I.C. System are each a debt collector as that term is defined in 15 U.S.C. § 1692a(6), and each used the mail in an attempt to collect from Plaintiff an alleged debt as that term is defined in 15 U.S.C. § 1692a(5).

125. Snap violated 15 U.S.C. § 1692e(13) by captioning its communication "Protax Consulting Services Inc v Jacob Murphy," which falsely represented and implied that the communication was legal process, when no action had been filed or commenced against Plaintiff.

126. Snap violated 15 U.S.C. § 1692e(5) by threatening legal action that was not intended and was never taken, and 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the alleged debt.

127. Snap violated 15 U.S.C. § 1692f(1) by attempting to collect $1,150.00, an amount that no agreement creating the alleged debt authorized and that no law permitted.

128. Snap violated 15 U.S.C. § 1692g(b) by continuing to collect the alleged debt after receiving Plaintiff's written disputes of August 19, 2025 and September 12, 2025 without first mailing verification of the debt.

129. I.C. System violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the alleged debt in its April 10, 2026 validation notice, which stated that Plaintiff owed $1,495.00 as of July 20, 2025 when the creditor's invoice of that date was $1,150.00, and which stated that no fees had been added when the difference between those figures was a collection fee.

130. I.C. System violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the alleged debt, and 15 U.S.C. § 1692f(1) by attempting to collect an amount not expressly authorized by any agreement creating the alleged debt and not permitted by law.

131. Snap and I.C. System are each liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Moshe Boroosan*
Moshe Boroosan, Bar No. MB0911
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, New York 11367
T: (718) 874-6960
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff,*
*Jacob Sebastian Murphy*